# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:16-cv-00862-MR

| | |
|---|---|
| LYUBOV VIRKH, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social )<br>Security )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 11].

## I.   PROCEDURAL BACKGROUND

The Plaintiff, Lyubov Virkh ("Plaintiff"), asserts that her heart problems, knee dysfunction, and heel pain constitute severe physical impairments under the Social Security Act (the "Act") rendering her disabled. On April 8, 2013, the Plaintiff filed applications for disability insurance benefits under Title II of the Act and supplemental security benefits under Title XVI of the Act, alleging an onset date of March 13, 2013. [Transcript ("T.") at 225, 229].

The Plaintiff's applications were denied initially and upon reconsideration. [T. at 157, 170, 174]. Upon Plaintiff's request, a hearing was held on May 7, 2015, before an Administrative Law Judge ("ALJ"). [Id. at 95]. Present at the hearing were the Plaintiff; Michelle Baker, Plaintiff's attorney; and a vocational expert ("VE"). [Id.]. On July 10, 2015, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [Id. at 82-90]. On July 24, 2015, the Plaintiff requested that the Appeals Council review the ALJ's decision. [Id. at 78]. On November 4, 2016, the Appeals Council denied the Plaintiff's request for review [Id. at 1], thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards

and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments

4

("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§

404.1520, 416.920; <u>Mascio</u>, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. <u>Id.</u> Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged date of onset, March 13, 2013. [T. at 84]. At step two, the ALJ found that the Plaintiff has severe impairments including heart problems, knee dysfunction, and heel pain. [<u>Id.</u>]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [<u>Id.</u> at 85]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, has the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must be afforded a sit/stand option to change positions twice each hour; she must avoid concentrated exposure to hazards and unprotected heights; and she is limited to simple, routine, repetitive tasks. In addition, <u>she must avoid jobs that require complete fluency in English as she understands and speaks basic English (level one language)</u>.

[<u>Id.</u> at 85 (emphasis added)].

6

At step four, the ALJ held that the demands of Plaintiff's past relevant work exceed her RFC and Plaintiff is, therefore, unable to perform any past relevant work. [Id. at 89]. At step five, based on the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including bench assembler, laundry worker, and nut/bolt assembler. [Id. at 89]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from March 19, 2013, her alleged date of onset, through July 10, 2015, the date of the ALJ's decision. [Id. at 90].

## V. DISCUSSION[1]

On appeal, Plaintiff argues that the ALJ "erred by finding that the medical record clearly demonstrated Plaintiff could speak in English and by failing to make a finding regarding her ability to read and write in English." [Doc. 10 at 4]. Plaintiff contends reversal is required because, had the ALJ properly found she is illiterate in English, § 202.09 of the Medical-Vocational Guidelines (the "Grids") would dictate a finding that she is disabled. [Doc. 10 at 2]. Defendant, on the other hand, argues that the ALJ properly

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

evaluated Plaintiff's ability to communicate in English and supported his findings by referring to substantial evidence in the record. [Doc. 12 at 7].

In evaluating what work, if any, a claimant can perform, an ALJ must "consider a person's ability to communicate in English," which includes "the ability to speak, read and understand English." 20 C.F.R. § 404.1564(b)(5). Section 202.09 of the Grids dictates a finding of "disabled" where a claimant is "closely approaching advanced age," is "illiterate or unable to communicate in English," and has only "unskilled" previous work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.09. The Regulations define illiteracy as "the inability to read or write." 20 C.F.R. § 404.1564(b)(1). A claimant is considered "illiterate" or "unable to communicate in English" if the claimant cannot: (1) read a simple message (such as short instructions or inventory lists) in English; (2) write a simple message in English, and/or (3) speak or understand a simple message in English. POMS, DI 25015.010.

Relying on these requirements, Plaintiff argues that the ALJ erred because he failed to make any findings regarding the Plaintiff's ability to read and write English. [Doc. 10 at 4]. The ALJ, however, made findings regarding Plaintiff's ability to speak, *read, write and understand* English. Specifically, the ALJ found that Plaintiff "must avoid jobs that require complete fluency in English as she understands and speaks basic English

(level one language)." Plaintiff appears to assert that this finding is insufficient to support the ALJ's conclusion regarding Plaintiff's language competency. Particularly, Plaintiff argues that this finding fails to address Plaintiff's ability to read and write. [Doc. 10 at 6]. This finding, however, with its reference to "level one language" incorporates components pertaining to reading and writing, as well as speaking a language. As the Fourth Circuit has concluded, "level one language" generally corresponds with reading between the first- and second-grade levels. Rholetter v. Colvin, 639 Fed.Appx. 935, 937-8 (4th Cir. 2016). "Level one language" is one component of the "definition trailer" that follows each occupation defined in the Dictionary of Occupational Titles (DOT). Appendix C of the DOT defines each component of the definition trailer, one of which is General Educational Development (GED). GED "embraces those aspects of education (formal and informal) which are required of the work for satisfactory job performance." DOT, App. C. The GED scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development. Id. "Level one language" is the lowest level on the scale of Language Development, which ranges from levels six through one. Level one is characterized by the following abilities:

> Reading:
>
> Recognize meaning of 2,500 (two- or three- syllable) words. Read at rate of 95-120 words per minute.
>
> Compare similarities and differences between words and between series of numbers.
>
> Writing:
>
> Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
>
> Speaking:
>
> Speak simple sentences, using normal word order, and present and past tenses.

<u>Id.</u> The ALJ also found that Plaintiff "has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964)," [T. at 85, 89], and that, "while the claimant had the assistance of an interpreter during her hearing, it is clear from the medical record that she is able to understand and to speak basic English <u>in order to perform work activities</u>." [T. at 88 (emphasis added)].

The ALJ's specific finding in his RFC assessment that Plaintiff "understands and speaks basic English (level one language)" necessarily includes findings regarding Plaintiff's abilities to read and write English as provided in the DOT, Appendix C, as set forth above. Further, the ALJ's finding that Plaintiff "is able to communicate in English" within the meaning

10

of §§ 404.1564 and 416.964 is a finding of an ability not only to speak English but also to read and write in the English language as well. 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5). As such, the ALJ made specific findings regarding Plaintiff's ability to read and write in the English language. Therefore, Plaintiff's argument that the ALJ's findings fail to address Plaintiff's ability to read and write English is without merit.

Next, Plaintiff argues that the ALJ's findings regarding language proficiency are unsupported by substantial evidence.[2] The ALJ noted, however, "it is clear from the medical record that she is able to understand and to speak basic English <u>in order to perform work activities</u>." [T. at 88 (emphasis added)]. The medical record shows that Plaintiff opted to have interpretive assistance, either by her daughter or a professional interpreter, at some of her doctors' appointments. [T. at 9, 308, 320, 461, 498, 526, 539]. The medical record also shows, however, that Plaintiff successfully attended many doctors' appointments by herself and without the assistance of an interpreter. [T. at 338, 340, 342, 344, 346, 350, 324, 407, 409, 412, 415, 444, 511, 516, 521]. Contrary to Plaintiff's argument, the question is not

---

[2] Plaintiff lumps these issues together into a single assignment of error that reads, "[d]id the ALJ err by finding that the medical record clearly demonstrated Plaintiff could speak in English and by failing to make a finding regarding her ability to read and write in English." [Doc. 10 at 4 "Issue Presented"]. Sufficiency of findings and whether findings are supported by substantial evidence are separate issues that should be presented via separate assignments of error.

whether Plaintiff can speak fluently with her healthcare providers regarding often complex medical issues. The relevant inquiry is whether Plaintiff is "illiterate" or "unable to communicate in English." See POMS, DI 25015.010. As the ALJ found, the medical record supports the finding that Plaintiff understands and speaks English well enough "to perform work activities." [T. at 85].

Further, Plaintiff indicated on her Disability Report, Form SSA-3368, that she speaks and understands English, can read and understand English, and can write more than her name in English. [T. at 250]. At the hearing in this matter, the ALJ posed a hypothetical to the VE which included, in relevant part, "we should avoid jobs that require complete fluency in English. She appears to [ ] understand basic English instructions, especially short commands. That is all. Are there any jobs?" [T. at 118]. In response, the VE identified the jobs of bench assembler, laundry worker, and nut/bolt assembler. [T. at 118-19]. When given the opportunity to pose an alternative hypothetical to the VE, Plaintiff's attorney did not make any alternations to the ALJ's restriction regarding Plaintiff's ability to communicate in English. The attorney added only a restriction regarding the need to "lie down [ ] three or four times a day for an hour each time." [T. at 119]. The record also shows that Plaintiff ran her own cleaning service for 6 years in Charlotte,

North Carolina, and worked as a cook in a restaurant for 4 years in State College, Pennsylvania. [T. at 252, 101-2, 104]. Plaintiff's relative ability to communicate in English did not preclude her from performing these occupations, which both fall within the category of unskilled work with GED language level one. [T. at 106-7; DOT 301.687-014, 317.687-010]. In short, substantial evidence supported the ALJ's findings regarding Plaintiff's ability to communicate in English.

Finally, Plaintiff argues that, "[p]ursuant to the grids, if Plaintiff is either unable to communicate in English or illiterate in English, she is disabled with her light RFC and history of unskilled medium work." [Doc. 10 at 4]. For the reasons stated above, there is substantial evidence to support the ALJ's finding that § 202.09 does not apply because the ALJ properly found Plaintiff is not illiterate and is able to communicate in English. As such, § 202.09 is not applicable. Id., § 200.00 ("Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled."). Plaintiff's argument on this issue is also without merit.

## VI. CONCLUSION

The decision of the Commissioner is supported by substantial evidence and is based on the application of the correct legal standards. Accordingly, the Commissioner's decision is affirmed.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED** and the Defendant's Motion for Summary Judgment [Doc. 11] is **GRANTED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **AFFIRMED** and this case is hereby **DISMISSED**. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: March 22, 2018

Martin Reidinger
United States District Judge